# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2066

_____

| | | |
|---|---|---|
| Caddo Valley Railroad Company; Gina Garner; Tim Bean; Melanie Hall; Corey Thomason, shareholders, | * * * * | |
| Petitioners, | * * | |
| CertainTeed Corporation; GS Roofing Products Company, Inc.; Pioneer Railcorp, | * * * | Petition for Review of an Order of the Surface Transportation Board. |
| | * * | |
| Not Party—Intervenors | * * | |
| v. | * * | |
| Surface Transportation Board; United States, | * * * | |
| Respondents, | * * * | |
| Arkansas Midland Railroad Company, Inc. | * * * | |
| Intervenor. | * | |

_____

Submitted: September 25, 2007
Filed: January 14, 2008

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner Caddo Valley Railroad Company (CVR) is a rail carrier that acquired a railroad line through a forced sale pursuant to 49 U.S.C. § 10907. This provision gives the Surface Transportation Board authority to force a sale of a line to petitioning individuals when the existing carrier fails to provide adequate service or abandons the line. The statute also contains a right-of-first-refusal provision, which states that "a purchasing carrier" who "proposes to sell or abandon . . . [the] purchased railroad line . . . shall offer the right of first refusal . . . to the carrier which sold such line." 49 U.S.C. § 10907(h). CVR shareholders seek to sell 100% of the corporation's stock. The Board determined this is equivalent to the corporation selling the railroad line under the statute's first-refusal provision. Because the Board's decision was based on a permissible construction of the statute, we affirm.

I.

CVR is a rail carrier currently providing railroad service to shippers on the Norman Branch line in Arkansas. Petitioners Tim Bean, Gina Garner, Melanie Hall, and Corey Thomason have been CVR's only shareholders, and the Norman Branch railroad line is CVR's only rail asset. CVR acquired the line through a forced sale in 2000 from Arkansas Midland Railroad Company, Inc. (AKMD), who is an intervenor in this case. The history of the Norman Branch line and the forced sale is detailed in previous cases from this court: Caddo Antoine & Little Mo. R.R. Co. v. United States, 95 F.3d 740 (8th Cir. 1996); GS Roofing Prods. Co. v. Surface Transp. Bd., 143 F.3d 387 (8th Cir. 1998); and GS Roofing Prods. Co. v. Surface Transp. Bd., 262 F.3d 767 (8th Cir. 2001).

CVR shareholders initially sought to sell the Norman Branch railroad line to Pioneer Railcorp. After realizing this would trigger AKMD's statutory right of first refusal, however, the parties restructured the transaction. The shareholders now seek to sell 100% of CVR stock to Pioneer in an effort to prevent the sale from triggering AKMD's right of first refusal.

AKMD alleged the stock sale would trigger the statutory right of first refusal. The Board heard the case and determined that the first-refusal provision in § 10907(h) applied to CVR shareholders' sale of 100% of their stock. CVR shareholders argued that this provision is inapplicable because it applies only to "purchasing carrier[s]" and that the corporation, not its shareholders, is the purchasing carrier. Additionally, the shareholders argued they are selling stock, not a "railroad line," and thus the statutory right of first refusal is not triggered.

The Board, however, rejected these arguments. It first found that the statute is "unclear or silent" as to whether a sale of 100% of a corporation's stock constitutes the sale of a "purchased railroad line." The Board was "guided by Congress' clear intent" that a carrier, such as AKMD, that was "forced to sell a line" has "the right to reacquire the line" if the purchaser attempted to abandon or sell the line. Ark. Midland R.R.—Petition for Declaratory Order—Caddo Valley R.R. Co., S.T.B. 34865, 3 (Apr. 30, 2007). The Board held that the shareholders were effectively a "purchasing carrier," and the sale of their stock would, in effect, be the sale of a "railroad line" because the shareholders were "proposing to be totally divested of their interest in the Norman Branch." Id. at 4. We affirm the Board's decision that, under these circumstances, the sale of 100% of a corporation's stock by its shareholders can constitute a sale of a "railroad line" by a "purchasing carrier" within the meaning of § 10907(h).

II.

"Our scope of review in this matter is narrow."  GS Roofing Prods. Co., 262 F.3d at 774.  "We are required to give considerable deference to the Board's interpretation of the statutes and regulations it is entrusted to administer, and we will not disturb the Board's decision absent compelling indications that the Board's interpretations were incorrect."  Id. (citation omitted).  In this case, congressional intent is not "clear from the plain language of the statute." See Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 936 (8th Cir. 2000).  Thus, we will affirm a decision that "'is based on a permissible construction of the statute.'" Caddo Antoine & Little Mo. R.R. Co., 95 F.3d at 746 (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)).  This court is "nevertheless obligated to ensure that proper legal standards were correctly applied."  GS Roofing Prods. Co., 262 F.3d at 774 (quotation omitted).

With this highly deferential standard of review in mind, we affirm the Board's narrowly construed holding.  The Board interpreted §10907(h)'s right-of-first-refusal provision[1] to apply to the narrow facts of the present case, where shareholders seek to sell 100% of a corporation's stock in an effort to completely divest themselves of

_____

[1]In full, this provision provides:

> If a purchasing carrier under this section proposes to sell or abandon all or any portion of a purchased railroad line, such purchasing carrier shall offer the right of first refusal with respect to such line or portion thereof to the carrier which sold such line under this section. Such offer shall be made at a price equal to the sum of the price paid by such purchasing carrier to such selling carrier for such line or portion thereof and the fair market value (less deterioration) of any improvements made, as adjusted to reflect inflation.

49 U.S.C. § 10907(h).

their interest in the railroad line and where the railroad line is the corporation's only rail asset.

CVR shareholders argued that Congress's inclusion of both a sale of stock and a sale of a railroad line in another provision, 49 U.S.C. § 11323(a), indicates that congressional failure to list both of these methods of sale in §10907(h) suggests that the right of first refusal applies only to the sale of a railroad line and not the sale of stock. However, in § 11323(a), Congress provided a listing of the methods of sale that are subject to government approval, and it was appropriate for Congress to enumerate specifically the methods of sale in that context. Thus, Congress's failure to list a sale of stock in §10907(h) does not suggest that the sale of 100% of a corporation's stock is not equivalent to the sale of a railway line.

We also note that the Board confined its decision to the specific and uncommon facts of this case. The corporation's predominant—if not sole—purpose was to be a vehicle for the shareholders to operate the line. The shareholders' sale of all the stock could thus actually be a sale of the railroad line itself. A contrary conclusion would allow prospective purchasers under §10907's forced-sale provision to avoid the first-refusal requirement and subvert congressional intent by creating a corporation to purchase the railroad line. See Allegheny Ludlum Corp. v. United States, 367 F.3d 1339, 1347 (Fed. Cir. 2004) (equating the sale of 100% of a corporation's stock with a sale of assets, so as not to "irrationally and artificially encourage one form of transfer over another" and thus "elevate form over substance"); see also Fox Valley & W. Ltd. v. Interstate Commerce Comm'n, 15 F.3d 641, 645 (7th Cir. 1994) ("The path is not important. What is important is that unless the [Interstate Commerce] Commission is permitted enough interpretative latitude to close obvious loopholes opened by the manipulation of corporate forms, the statute will be quickly nullified by clever lawyers."). We express no opinion on whether the first-refusal provision would apply when shareholders sell less than 100% of stock or when the corporation owns more than a single rail asset or substantial other assets because the issue is not

before us. Given the facts of this case, the Board's decision is not based on an impermissible construction of the statute.

We affirm the Board's decision and deny the petition for review.

_____